

# In the Missouri Court of Appeals
# Eastern District
## DIVISION THREE

IN THE INTEREST OF B.J.

)
)
)
)
)
)
)
)
)
)

No. ED111060

Appeal from the Circuit Court of the City of
St. Louis City
2022-JU00461

Honorable Steven R. Ohmer

Filed: November 21, 2023

Before Lisa P. Page, P.J., Gary M. Gaertner, Jr., J., and Angela T. Quigless, J.

B.J. appeals from the judgment of the Circuit Court of the City of St. Louis, Juvenile

Division (juvenile court) committing him to the custody of the Division of Youth Services. We

affirm.

## Background

On November 12, 2020, the Juvenile Officer of the City of St. Louis (Juvenile Officer)

filed a petition against B.J. which alleged one count of attempted stealing, one count of felony

stealing, and one count of misdemeanor stealing. The Juvenile Officer and B.J. entered a

consent disposition upon amended charges of second-degree tampering, second-degree property

damage, and misdemeanor stealing. B.J. was placed on court supervision and ordered committed

to the custody of his mother (Mother) with certain conditions. B.J. was prohibited from

possessing alcohol, illegal drugs, or non-prescribed drugs; he was to submit to random blood,

breath, and urine testing upon request by Mother or the assigned Deputy Juvenile Officer (DJO); and he was not to own or possess a firearm, among other conditions.

On May 3, 2021, the Juvenile Officer filed a motion to modify the previous order of disposition, alleging violations of the conditions of his home detention. Following an amended motion to modify alleging additional violations, the Juvenile Officer dismissed the motion because the court ordered placement in a residential treatment program. On July 28, 2022, the Juvenile Officer again filed a motion to modify for violations of the conditions of B.J.'s detention. Specifically, the Juvenile Officer alleged B.J. left home without permission on July 20, 2022; he failed to begin drug treatment on July 21, 2022; he tested positive for THC or marijuana (THC) on July 11, 2022; and he possessed a firearm on July 25, 2022. After a hearing, the juvenile court issued an order and judgment of disposition on September 14, 2022, committing B.J. to the custody of the Division of Youth Services (DYS). The present appeal follows.

## Discussion

In his sole point on appeal, B.J. argues the juvenile court erred in finding he violated a condition of his probation by testing positive for THC because the judgment was not based on substantial evidence. He contends the test was inadmissible as only a preliminary screening and not suitable to prove an individual ingested THC. B.J. claims the proper remedy is to remand for a new dispositional hearing.

## Escape Rule

As a threshold matter, we note that Juvenile Officer argues the appeal should be dismissed pursuant to the escape rule. This judicially-created doctrine denies a criminal defendant who escapes justice the right to appeal. *Parsons v. State*, 383 S.W.3d 71, 73 (Mo.

App. E.D. 2012). Application of this rule is left to the sound discretion of the appellate court. *Id*. The relevant inquiry is the adverse impact on the criminal justice system, not solely the effect of the escape upon the appellate process. *Id*. There are multiple factors to consider for application of the escape rule to preclude a defendant's appeal. *Id*.

Here, the Juvenile Officer asserts the doctrine should be applied because apprehension warrants were issued for B.J. on May 3, 2021, and again July 26, 2022, when his whereabouts were unknown. B.J. left Mother's home without permission, did not attend school, and failed to attend his court-ordered outpatient substance abuse treatment. However, the Juvenile Officer acknowledges the escape rule has not been previously applied to dismiss appeals in juvenile delinquency cases. While it is clear B.J.'s decision to abscond more than once and his absence from home, school, and treatment impacted the process below, we decline to apply the escape rule because we prefer to consider the merits of B.J.'s point on appeal.

### *Standard of Review*

We review the decision in a juvenile adjudication under the same standard as a court-tried case. *In Int. of S.B.A.*, 530 S.W.3d 615, 622 (Mo. App. E.D. 2017). We will affirm the juvenile court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id*. Where the issue is whether a juvenile's probation is revoked, as in the present case, there must be clear and convincing evidence to support the judgment. *C.L.B. v. Juvenile Officer*, 22 S.W.3d 233, 237 (Mo. App. W.D. 2000). In addition, the trial court determines the credibility of witnesses and the weight to be given their testimony. *Id*. at 236. The court is free to believe all, none, or part of their testimony. *Id*. We view the evidence and reasonable inferences in the light most favorable to the judgment, and we ignore evidence and inferences to the contrary. *Id*.

3

*Analysis*

In his sole point on appeal, B.J. contends the juvenile court erred in finding he violated a condition of his probation by testing positive for THC because the test was only for preliminary screening purposes. He essentially argues the results of the test were inadmissible because they were not confirmed by a laboratory, and absent evidence of a positive test, the judgment was not supported by substantial evidence.

B.J. largely relies upon *State v. Clark*, 488 S.W.3d 150 (Mo. App. E.D. 2016). In *Clark*, a criminal defendant was convicted of second-degree assault, armed criminal action, and resisting arrest. *Id*. at 151. The defendant appealed, arguing in relevant part that the trial court abused its discretion in limiting his defense by allowing the state to redact pages of medical records containing the victim's positive results of blood tests for alcohol and cocaine. *Id*. at 152. Our court affirmed the redaction of the blood test results because the records contained confusing explanations of the alcohol and drug testing, and the meaning and implication of those results were unclear without assistance of expert testimony to explain the results. *Id*. at 155.

Consistent with the holding in *Clark*, it has been determined that other scientific tests do not have to be conclusive to be admissible if there is sufficient testimony accurately describing the test so it is helpful to the jury. *See State v. Taylor*, 298 S.W.3d 482, 501 (Mo. banc 2009). If the jury is sufficiently informed, questions regarding the conclusiveness of a test go to the weight given such evidence and not its admissibility. *Id*. at 500.

We find *Clark* distinguishable from the present case. Here, there was no confusion regarding the results of the test. Sufficient evidence was adduced to provide the finder of fact an accurate description of the test and the manner in which it was administered. The original terms of B.J.'s court supervision ordered random urine tests at the request of a parent, custodian or the

assigned DJO. The DJO supervising B.J. at the time testified she had directed B.J. to go to a treatment facility for random drug testing but he "kept avoiding" doing so. In addition, she testified Mother reported concerns B.J. was using drugs based on his behavior. Mother also testified she was aware of his marijuana use, and during the dispositional hearing, B.J. himself admitted he used marijuana. The DJO was trained to administer drug tests in the field, had used on-site testing, described the process for administering the test, and testified the results were positive for THC.

B.J. now claims the Reveal test package label supports a conclusion that the test is merely preliminary and must be tested in a laboratory to confirm the results; however, this label was not in evidence before the juvenile court and is only found in the appendix to B.J.'s brief. Rule 84.04(h)[1] allows an appellant to submit an appendix including "other pertinent authorities," but certainly does not authorize inclusion of records outside the record on appeal. Adding such records to the appendix does not make them part of the record. *Int. of S.M.W.*, 658 S.W.3d 202, 205 n.2 (Mo. App. W.D. 2022). The label was not introduced at the hearing before the juvenile court and was not included in the record on appeal. As a result, we do not consider it here. *Id*.

We find the test results were relevant and admissible even absent a laboratory confirmation, and as previously noted, the credibility and weight given the witnesses' testimony was for the juvenile court to determine. *C.L.B.*, 22 S.W.3d at 236. The juvenile court's judgment was supported by substantial evidence that B.J. violated a condition of his previously ordered court supervision and probation.

B.J. further asserts that in the event he prevails on his point on appeal then *Int. of J.R.K.*, 643 S.W.3d 141 (Mo. App. W.D. 2022) requires a remand for a new hearing even if there is

---

[1] All references to Rules are to Missouri Supreme Court Rules (2022).

sufficient evidence to support the additional allegations of violation of his probation, including leaving home without permission, failing to enter drug treatment, and possession of a firearm. We disagree because *J.R.K.* is distinguishable. In that case, a juvenile who failed to appear for a hearing on a motion to modify a previous disposition was adjudicated delinquent and placed in a residential program. *Id*. at 144. On appeal, the juvenile claimed his adjudication for committing what would be the crime of failing to appear under Section 544.665 if he were an adult was error because the statute does not apply to juvenile proceedings. *Id*. at 142. The court agreed and reversed his adjudication. *Id*. at 146. The court acknowledged the juvenile admitted three of the additional allegations in the motion to modify, which may have been sufficient themselves to warrant the court's decision. *Id*. However, because in that matter the court could not be certain whether the erroneous determination that the juvenile violated Section 544.665 "tipped the scales," it remanded the matter for further proceedings. *Id*.

B.J. claims that similar to *J.R.K.*, this court cannot be certain the positive test for THC "tipped the scales." First, the decision in *J.R.K.* was based on a finding of error, and we do not find any error here. Second, we find there was significant evidence of the additional allegations, none of which B.J. challenges the admission of on appeal. Mother testified B.J. left her home without permission multiple times, the DJO supervising him testified he did not complete the drug treatment ordered, and Mother testified she saw B.J. in possession of a firearm in her home. Finally, the supervising DJO testified to the contents of a video referenced in his report from B.J.'s social media standing on top of a stolen vehicle holding a firearm. Over objection, the video was played at the proceeding and admitted as Exhibit 2. As a result, even if the drug screen was excluded, there was sufficient evidence that B.J. continuously and repeatedly violated the terms of his probation such that any of this evidence would have kept the scale solidly

6

weighted in favor of his commitment to DYS. Therefore, the judgment was supported by substantial evidence and was not erroneous. B.J.'s point on appeal is denied.

## Conclusion

The judgment of the juvenile court is affirmed.

_____
Lisa P. Page, Presiding Judge

Gary M. Gaertner, Jr., J., and
Angela T. Quigless, J., concur.